**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**
Civil Action No. _____

| | |
|---|---|
| IN RE SUBPOENA ISSUED TO WILLIAM D. SAMMON | |

**NON-PARTY WILLIAM D. SAMMON'S MOTION TO QUASH SUBPOENA AND**
**FOX NEWS NETWORK, LLC'S MOTION FOR A PROTECTIVE ORDER**

William D. Sammon and Fox News Network, LLC ("FNN") together respectfully submit this consolidated memorandum of law in support of Mr. Sammon's Motion to Quash and FNN's Motion for a Protective Order with respect to a subpoena (the "Subpoena") seeking deposition testimony and production of documents by Mr. Sammon in Washington, D.C. for a civil action pending in the Southern District of West Virginia, ECF 1012 & 1012-1, *Blankenship v. Fox News Network, LLC, et al.*, No. 2:19-cv-00236 (S.D.W. Va.).[1]

**INTRODUCTION**

In the underlying lawsuit, Plaintiff Don Blankenship asserted claims of "defamation/conspiracy to defame" and "false light invasion of privacy / conspiracy" against more than 100 media companies and defendants arising from statements made during his campaign for United States Senate shortly after his release from a one-year sentence in federal prison. ECF 14.

The discovery period in the underlying lawsuit ended on May 3, 2021 and summary judgment motions are pending. ECF 440; ECF 444; ECF 940.

---

[1] A copy of the subpoena that Don Blankenship served on Mr. Sammon is attached as Exhibit A to Mr. Sammon's Declaration in support of his Motion to Quash ("Sammon Decl."). This motion is filed in the District of Columbia because the Subpoena commands compliance in Washington, D.C. Fed. R. Civ. P. 45(d); Ex. A to Sammon Decl.

All ECF citations herein refer to the docket in the underlying action.

The crux of Mr. Blankenship's Amended Complaint in the underlying lawsuit is that — while it is indisputable that he served a one-year federal prison sentence for conspiring to willfully violate federal mine safety standards in a criminal case that "ar[o]se[] from a tragic accident on April 5, 2010 at the Upper Big Branch coal mine in Montcoal, West Virginia, which caused the death of 29 miners" during his tenure as CEO of the mine operator, *United States v. Blankenship*, 846 F.3d 663, 666 (4th Cir. 2017) — during his campaign for United States Senate in the months after his release from prison, more than 100 media defendants, spanning the political spectrum, including four major television networks, numerous national and other newspapers, and various other persons and publications, all knowingly, and with the requisite actual malice, defamed him (and/or conspired to defame him) by describing the classification of his crime as a felony, when it technically qualified as a misdemeanor since the maximum sentence was one year.  ECF 14.

Mr. Sammon played no role in the events on which Mr. Blankenship's defamation and conspiracy claims are based.  It is not surprising, therefore, that during the year-long discovery period Plaintiff never sought to depose Mr. Sammon.  Now, five months *after* discovery closed, Plaintiff issued a discovery subpoena to Mr. Sammon, as part of a desperate effort to stave off summary judgment under the guise that further discovery is necessary.

The Amended Complaint does not allege that Mr. Sammon defamed or conspired to defame Plaintiff Blankenship.  And no discovery has suggested Mr. Sammon was involved in any program on which Plaintiff was allegedly defamed, or that he communicated about Plaintiff or the allegedly defamatory matter with anyone who is alleged to have defamed Plaintiff or conspired to do so.  While Sammon was involved in producing a debate on which Plaintiff appeared, Plaintiff does not assert he was defamed during that debate.  It is telling that, prior to the May 3, 2021 discovery cutoff, Plaintiff never sought to depose Mr. Sammon.

While FNN made supplemental productions of documents after the close of discovery in compliance with a subsequent District Court order and stipulation, none of the documents in those productions shows or even suggests that Mr. Sammon was aware of or involved in any of the allegedly defamatory utterance about Plaintiff or even the programs on which they occurred.

As such, Plaintiff cannot show that he should be granted leave of court to take what would be a 25th deposition in this case.  Plaintiff cannot show the Subpoena is reasonably likely to yield evidence relevant to the claims and defenses in this action and "necessary," as he must show under the Federal Rules of Civil Procedure.  *Accord* ECF 982 at 21 n.6 (stating that further discovery "past the deadline" should not occur "beyond what is absolutely necessary").  Good cause also exists to quash the portion of the Subpoena requesting documents because Mr. Sammon has no responsive documents for the relevant period in his possession, custody or control.

## **BACKGROUND**

Procedural History.    Plaintiff Don Blankenship filed an action against more than 100 named defendants, including FNN, which was removed to the Southern District of West Virginia on March 29, 2019. *See Blankenship v. Fox News Network, LLC*, *et al.*, Civil Action No. 2:19-cv-00236 (S.D.W. Va.).  Blankenship filed an Amended Complaint on April 9, 2019, including state law causes of action for defamation/conspiracy to defame, and false light invasion of privacy/conspiracy.  ECF 14.

Discovery lasted 12 months, closing on May 3, 2021.  ECF 440; ECF 444.  In the course of discovery, Plaintiff propounded to FNN (and FNN responded to) more than 100 document requests, 25 interrogatories and 20 requests for admissions.  *See* ECF 428, 473, 510, 600, 668, 742, 765.  In that period, FNN produced over 14,300 pages from numerous custodians, including Sammon.  *See* ECF 641.  Plaintiff deposed two dozen witnesses in the case, plus others in related

cases arising from the same events.[2]  Through the end of discovery, Plaintiff never served a subpoena *duces tecum* or *ad testificandum* on Mr. Sammon or otherwise sought to obtain discovery from him.  Mr. Sammon was formerly Senior Vice President and Managing Editor of FNN's Washington D.C. Bureau.  He no longer works for FNN.

On May 24, 2021, FNN and numerous other defendants filed summary judgment motions, *see, e.g.,* ECF 891, briefing for which was completed on June 14, ECF 940.

<u>Basis for Subpoena</u>.  On August 20, 2021, the District Court resolved one lingering discovery dispute that extended beyond the discovery deadline.  ECF 985.  Specifically, Plaintiff had sought production of "communications between . . . Fox Executives that were not shared with those involved in making the allegedly defamatory or false statements."  ECF 985 at 25.  On August 20, 2021, the District Court concluded that, although such communications "are perhaps not relevant for the purposes of proving actual malice as an evidentiary matter," *id.*, and "might not be used for summary judgment or admitted at trial," *id.* at 26, the court was "not left with a definite and firm conviction that the Magistrate Judge made a mistake" in denying FNN's motion for reconsideration of his order that they be produced, *id.* at 26, because they may "be relevant for purposes of discovery," *id.* at 25.  Within four business days of the District Court's ruling, FNN produced the responsive documents within its possession, custody or control, and FNN voluntarily invited Plaintiff to discuss reasonable additional discovery Plaintiff's counsel believed was warranted by the supplemental production.  ECF 1016-1.  On October 18, FNN made a final supplemental production pursuant to a stipulation between the parties regarding additional search terms run across dozens of custodian files.

---

[2] Of FNN-affiliated individuals, Plaintiff deposed FNN's corporate representative (ECF 748), Chris Stirewalt (ECF 645), Neil Cavuto (ECF 754), Karl Rove (ECF 779), Judge Andrew Napolitano (ECF 774), Gavin Hadden (ECF 840), and Karrah Kaplan/Levine (ECF 841).

None of the documents in FNN's supplemental productions evidence or even suggest that Mr. Sammon was involved in any program on which Plaintiff was allegedly defamed, or that he communicated about Plaintiff or the allegedly defamatory matter with anyone who is alleged to have defamed Plaintiff or conspired to do so.[3]

## ARGUMENT

### I.   Legal Standards.

Leave of Court.  Necessity: Under Federal Rule of Civil Procedure 30, a party must seek the Court's leave to take a deposition if the parties have not stipulated to the deposition and it "would result in more than 10 depositions being taken[.]"  Fed. R. Civ. P. 30(a)(2)(A)(i).  "[B]y specifically limiting the number of depositions, the drafters of Rule 30 clearly did not contemplate that depositions should either be unlimited in quantity, or be available without a showing of need." *Small v. City of Wilmington*, No. 7:17-CV-00071-FL, 2018 WL 6068057, at *2 (E.D.N.C. Nov. 19, 2018) (internal citation and quotation marks omitted).

The plain intention of the limit in Rule 30(a)(2)(A) is to control discovery costs and guard against misuse.  *See Galgano v. Cnty. of Putnam*, No. 16 Civ. 3572 (KMK)(PED), 2021 WL 2138759, at *1 (S.D.N.Y. May 26, 2021); *Whittingham v. Amherst College*, 163 F.R.D. 170, 171–72 (D. Mass. 1995) ("These rules were promulgated to enable courts to maintain a 'tighter rein' on the extent of discovery and to minimize the potential cost of '[w]ide-ranging discovery' and the potential for discovery to be used as an 'instrument for delay or suppression.'") (quoting Rule 26(b)(2) commentary).  Rule 30 thus assures "judicial review under the standards stated in Rule 26(b)(2) before any side will be allowed to take more than ten depositions in a case without

---

[3] The parties have met and conferred but were unable to reach resolution about the issues discussed herein.

agreement of the other parties."  Fed. R. Civ. P. 30, advisory comm.'s note to 1993 amend.

"The mere fact that many individuals may have discoverable information does not necessarily entitle a party to depose each such individual."  *Galgano*, 2021 WL 2138759, at *1 (cleaned up).  "The burden of persuading the court that additional depositions are necessary rests with the party seeking to take added depositions."  *Small*, 2018 WL 6068057, at *1 (citation omitted).  It is not enough that additional witnesses "*may have* discoverable information"— "[i]nstead, the moving party must make a particularized showing why extra depositions are necessary."  *Id.* (internal quotation marks and citation omitted, emphasis added).

As under Rule 26, this showing cannot be based upon general assertions.  Rather, "the moving party must make a particularized showing why extra depositions are necessary."  *Id.* (internal citation and quotation marks omitted).  Plaintiff must show that each requested deposition is "relevant to any party's claim or defense."  Fed. R. Civ. P. 26(b)(1).  If that showing is made, Rule 26 requires the court to further determine: (1) whether the additional discovery sought is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;" (2) whether "the party seeking discovery has had ample opportunity to obtain the information by discovery in the action;" or (3) whether the discovery is "relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(2)(C)(i)–(iii) (incorporating by reference Fed. R. Civ. P. 26(b)(1)).

"When a compelling reason is not presented, the court has the discretion, and even the obligation, to deny leave to take additional depositions." *Small*, 2018 WL 6068057, at \*2 (citation omitted)*; see also, e.g., Bell v. Fowler*, 99 F.3d 262, 271 (8th Cir. 1996) (upholding denial of additional depositions where plaintiff failed to make a particularized showing of need).

<u>Discovery Limitations</u>.  Rule 45(d) sets forth the protections available to a person subject to or affected by a subpoena.  Rule 45(d)(3) outlines when a court must quash or modify a subpoena, when it may do so, and when the court may direct compliance under specified conditions.  In particular, Rule 45 *requires* courts to quash a subpoena that "subjects a person to undue burden," Fed. R. Civ. P. 45 (d)(3)(A)(iv), which is construed to "encompass[] situations where the subpoena seeks information irrelevant to the case or that would require a non-party to incur excessive expenditure of time or money.'" *Cook v. Howard*, 484 Fed. App'x 805, 812 n.7 (4th Cir. Aug. 24, 2012) (interpreting a prior version of Rule 45, in which the current provisions of Rule 45(d) were found in Rule 45(c)).[4]

Under Rule 26(b)(2)(C), the court "must limit the frequency and extent of discovery" when "the discovery sought is unreasonably cumulative or duplicative;" it "can be obtained from some other source that is more convenient, less burdensome, or less expensive;" or the party seeking the discovery has already had ample opportunity to collect the requested information.  Further, discovery may not be had unless it "is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the

---

[4] *See* Fed. R. Civ. P. 45 advisory comm.'s note to 2013 amend. ("Subdivision (d) contains the provisions formerly in subdivision (c).")

proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).  "This rule 'cautions that all permissible discovery must be measured against the yardstick of proportionality.'"  *In re C. R. Bard, Inc. Pelvic Repair Sys. Prod. Liability Litig.*, MDL No. 2187, 2014 WL 12703776, at *2 (S.D.W. Va. June 30, 2014) (quoting *Lynn v. Monarch Recovery Mgmt., Inc.*, 285 F.R.D. 350, 355 (D. Md. 2012)).  And under Rule 26(c), discovery "may be restricted or prohibited when necessary to protect a person or party from annoyance, embarrassment, oppression, or undue burden or expense." *Id.* at *2.

## II.   Plaintiff has shown neither need nor good cause for the additional discovery from Mr. Sammon.

Plaintiff has already taken two dozen depositions in this case.  Discovery closed on May 3, 2021.  At no time—until now—has Plaintiff sought to subpoena Mr. Sammon either for testimony or documents.  What is more, the District Court in the underlying action has admonished the parties that, in light of the pending and fully briefed motions for summary judgment, discovery "past the deadline" should not occur "beyond what is *absolutely necessary*."  ECF 982 at 21 n.6 (emphasis added).

Here, Mr. Sammon's deposition and document production are not necessary and otherwise are not important in resolving the issues in the case, imposing an undue burden on Mr. Sammon. Fed. R. Civ. P. 26(b)(1); Fed. R. Civ. P. 45(d)(3).  Mr. Sammon is not a "witness" in this case.  His name does not appear in Plaintiff's 59-page Amended Complaint.  Neither Plaintiff nor FNN identified Mr. Sammon in their Rule 26 initial disclosures (or in Plaintiff's supplemental disclosures), and neither party mentioned him in their answers to interrogatories.  Mr. Sammon made none of the allegedly defamatory comments in this case.  Nor is he alleged to be responsible for, or involved in any way in the events leading to, any of the utterances at issue.  Plaintiff never once sought to depose Mr. Sammon during the many months that discovery was ongoing.

8

Nor do any documents from FNN's supplemental productions provide new grounds for taking his deposition.  FNN's supplemental productions included nothing of consequence with respect to Plaintiff's claims.  Many were either near duplicates or analogs of other documents previously produced in this case, so add nothing new.  The remainder do not connect Mr. Sammon with any of the facts underlying the alleged defamation or conspiracy claims.  First, documents on the debate simply show that Mr. Sammon sought to ensure that candidate selection for the debate was fairly determined on the basis of poll results, and others show he received draft questions the hosts prepared.  There is nothing there that remotely suggests any defamation or knowledge of a conspiracy.  Blankenship does not allege he was defamed during the debate.  To the contrary, Blankenship claimed the debate hosted by FNN was beneficial to him and helped him in the polls. ECF 14 ¶ 20 ("[A]fter he walloped his opponents in a nationally televised May 1, 2018 Fox News Debate, . . . [p]olling by Mr. Blankenship's opponents estimated his performance gained him an eight-point lead in the race.").

Second, Mr. Sammon appears on internal FNN communications regarding the balance of coverage among the three major candidates.  But none of those communications are with anyone accused of making defamatory statements, and none relate in any way to the alleged defamation or conspiracy.  Lastly, a few documents on election day with projections about Senator Manchin winning the Democratic Senate primary and Attorney General Morrissey winning the Republican Senate primary in West Virginia are purely factual and  do not support an inference that Mr. Sammon was in any manner involved in or knowledgeable about any defamation or conspiracy against Mr. Blankenship. In these circumstances, demanding that Mr. Sammon (a *former* FNN employee) testify at a deposition and produce documents from his personal files is not warranted. It is disproportional to the needs of the case, and will not be important to resolve the issues.  *See*

Fed. R. Civ. P. 26(b)(1).

If enforced, the Subpoena, would serve only to harass Mr. Sammon, subject him to undue burden, and unduly delay the adjudication of FNN's motion for summary judgment.  Fed. R. Civ. P. 26(c); Fed. R. Civ. P. 45(d)(3)(A)(iv).  Accordingly, good cause exists to issue a protective order to forbid the discovery demanded in the Subpoena and to quash such Subpoena.  Fed. R. Civ. P. 26(c); Fed. R. Civ. P. 45(d)(3)(A)(iv); *see also, e.g., Miceli v. Mehr*, No. 3:17-cv-00029 (VAB), 2018 WL 4925689, at *5 (D. Conn. Aug. 14, 2018) (granting motion to quash subpoena where "the discovery Mr. Miceli seeks is insufficiently related to any of his claims or defenses, and where not irrelevant, it is disproportional to the value of the requested information and the needs of the case.").

Further, there is no good cause or need for the subpoena *duces tecum* served on Mr. Sammon for the additional reason that Mr. Sammon does not have any responsive materials in his possession, custody or control for the relevant time period (January 1, 2018 through August 31, 2018).  Sammon Decl. ¶ 6.  To the extent any responsive emails existed, they have been produced by FNN.

<u>**CONCLUSION**</u>

For the foregoing reasons, this Court should enter a protective order and quash the Subpoena.

<div style="margin-left:40%">

Respectfully submitted,

/s/ David Parker
Elbert Lin, D.C. Bar No. 979723
David Parker, D.C. Bar No. 1030202
HUNTON ANDREWS KURTH LLP
951 E. Byrd Street
Richmond, VA 23219
804-788-8200 *office*
804-788-8218 *fax*

</div>

elin@HuntonAK.com
dparker@HuntonAK.com

Shawn Patrick Regan, D.C. Bar No. 1000045
Silvia Ostrower (*to be admitted pro hac vice*)
HUNTON ANDREWS KURTH LLP
200 Park Avenue
New York, NY 10166
212-309-1000 *office*
212-309-1100 *fax*
sregan@HuntonAK.com
sostrower@HuntonAK.com

J. Zak Ritchie (*to be admitted pro hac vice*)
Ryan McCune Donovan (*to be admitted pro hac vice*)
HISSAM FORMAN DONOVAN RITCHIE PLLC
P.O. Box 3983
Charleston, WV 25339
681-265-3802 *office*
304-982-8056 *fax*
zritchie@hfdrlaw.com
rdonovan@hfdrlaw.com

*Counsel for William D. Sammon and*
*Fox News Network LLC*

**CERTIFICATE OF SERVICE**

I, David Parker, counsel for William D. Sammon and Fox News Network LLC, hereby

certify that on October 19, 2021, I caused a true and correct copy of the foregoing Motion to

Quash and for Protective Order and the supporting papers to be served by email upon counsel for

the Plaintiff Don Blankenship in the underlying matter as listed below:

Jeffrey S. Simpkins, Esq.
SIMPKINS LAW
102 E. 2nd Avenue
Williamson, WV 25661
Tel: (304) 235-2735
simpkinslawoffice@gmail.com

Eric P. Early, Esq.
Jeremy Gray, Esq.
Lisa Marie Zepeda
EARLY SULLIVAN WRIGHT GIZER & McRAE LLP
6420 Wilshire, Boulevard, 17th Floor
Los Angeles, California 90048
Tel: (323) 301-46660
Fax: (323) 301-4676
eearly@earlysullivan.com
jgray@earlysullivan.com
lzeeda@earlysullivan.com

/s/ David Parker
 David Parker

12